UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LORENZO E. FLINT, JR.,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil Action No.  CV 04-S-2548-E |
| | ) |
| **MIKE REEVES, et al.,** | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM OPINION**

Paulette Guy McTizic and Lorenzo E. Flint, Jr., initially filed a joint *pro se* action pursuant to 28 U.S.C. § 2241, alleging that the respondents improperly precluded them from corresponding with each other while they were parties or witnesses in the same litigation. (Habeas Petition at p. 1).[1]  This action presently is before the court on the motion to dismiss as moot filed by respondent Warden Martha Jordan (Motion to Dismiss), and on the motion of Lorenzo Flint for costs and fees as a prevailing party (Fee Petition at p. 1).[2]

---

[1] The petition is located at document 1 in the record.

[2] The motion to dismiss and the fee petition are located at documents 6 and 8, respectively.

## BACKGROUND

### Procedural History

Because the joint claims asserted by Flint and McTizic were subject to the *in forma pauperis* provisions of 28 U.S.C. § 1915 and the screening requirements of 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c), the court severed the claims into separate actions. On December 9, 2004, the court ordered the respondents to appear and show cause why the requested relief should not be granted. (doc. no. 4). The respondents filed their motion to dismiss this action as being moot. The court then afforded the petitioner[3] an opportunity to respond to the motion. Flint filed his motion seeking an award of the costs and fees related to the filing of the initial joint habeas petition (Fee Petition) (doc. no. 8) and a "Motion Agreeing to Respondents' Motion to Dismiss Following the Court's Resolution of the Issue of Awarding Petitioner's Cost and Fees as the Prevailing Party in this Action" (doc. no. 9). The respondents filed an "Opposition to the Petitioner's Motion for Fees and Costs." (doc. no. 10). Lastly, Flint filed a "Reply" to the "Opposition." (doc. no. 11).

On October 25, 2005, respondent Martha Jordan informed the court that United States District Judge Sharon Blackburn recently dismissed the related action brought

---

[3] Although Flint is referred to in his pleadings and herein as the petitioner, this action is not properly considered a habeas action under § 2241, but is really a claim for relief under *Bivens v. Six Unknown Agents of Bureau of Narcotics and Dangerous Drugs*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 2672, et seq.

by McTizic, finding that the case was moot and that she was not entitled to recover her fees and costs. (Doc. no. 12).[4]

**Factual History**

Flint was convicted in 1993 in the United States District Court for the Northern District of Georgia on drug trafficking offenses. He is presently serving a 30-year sentence and is incarcerated in the Federal Correctional Institution in Talladega, Alabama.

McTizic was convicted in 2003 in the United States District Court for the Northern District of Texas on bank fraud offenses. She is presently serving a 77-month sentence and is incarcerated in the Federal Prison Camp ("FPC") in Bryan, Texas.

In April 2003, while Flint was incarcerated in the United States Penitentiary ("USP") in Beaumont, Texas, in the Eastern District of Texas, he filed a civil action against the Bureau of Prisons ("BOP") and certain of its employees at the USP Beaumont, Texas. (Petition at p. 3). The action was filed pursuant to *Bivens* and the Federal Tort Claims Act, 28 U.S.C. § 2672. He alleged that the defendants violated his constitutional rights and BOP regulations. Specifically, he alleged as follows:

---

[4]The court has reviewed Judge Blackburn's opinion in the McTizic (*McTizic v. Reeves*, 1:04-cv-03085-SLB) case and finds that the opinion correctly assesses and determines the identical issues that are before the undersigned in this matter. Accordingly, the court's analysis and findings below are identical in most respects.

. . . on September 19, 1997, [Flint] was transferred to the United States Penitentiary at Beaumont, Texas. He was assigned to the job of housing unit orderly for holiday and weekend days only.

In August 1998, plaintiff received a large cash inheritance which he placed in a passbook savings account at First Bank of Florida. On July 13, 1999, he transferred $100,000 from his savings account to a money market account with Salomon Smith Barney, Inc. ("SSB"). He states Stanford Firestone and Joan Smith were the brokers who handled his account at SSB. He states that upon receiving the $100,000, SSB notified plaintiff it had opened an account on his behalf.

After plaintiff received BOP approval to placed [sic] telephone calls to SSB, he began calling Mr. Firestone and Ms. Smith for the purpose of investing his cash in the stock market. Beginning in July 1999 and continuing until October 1, 1999, he directed Mr. Firestone and Ms. Smith as to what stocks to buy and sell. Plaintiff states that on no occasion during this time period was he warned or cautioned that what he was doing was prohibited or violated any BOP policy.

Plaintiff alleges that at some point between July, 1999, and October 1, 1999, he spoke with a "paramour" from his past over the inmate telephone, which is monitored by prison officials.[5] During the conversation, plaintiff boasted about the returns he was receiving from his stock transactions. He states that his former paramour, now married to a correctional officer, insulted him by asking him if he would purchase her, among other things, a new automobile. Plaintiff responded to her insult by ridiculing her choice of a correctional officer as a husband. He told her that as a result of the occupation her husband had chosen, he could not afford to buy her many of the things she desired. He states his ridicule of her husband was long, drawn-out and very offensive and would have offended any prison official who was listening to the conversation.

Plaintiff alleges that on October 1, 1999, M. Mann filed an incident report accusing plaintiff of violating BOP policy, specifically

---

[5]Plaintiff states he terminated his relationship with his former paramour in 1988 and married another woman in 1989.

unauthorized use of a telephone/conducting a business.[6] The incident report alleged that on October 1, 1999, at approximately 1:08 p.m., Mr. Mann observed plaintiff sell 100 shares of stock and purchase several other stocks. Plaintiff states that as a result of the incident report, his telephone privileges were suspended for 30 days. He states defendant Rogalsky, a case manager, executed the sanction.

Immediately after he received the incident report, plaintiff notified his private attorney, Linda Sheffield, about what had happened. Ms. Sheffield responded by locating a copy of the relevant BOP policy and faxing a copy to officials at the Beaumont unit.

At some point between October 1, 1999, and January 27, 2000, defendant Leon, a counselor, approached plaintiff and told him he had to find a new work assignment because the position of housing unit orderly for holidays and weekends was being terminated altogether. He states he immediately located Brad Gilcrest, a white inmate who occupied the same position and was just as active as plaintiff in engaging in stock transactions. He states Mr. Gilcrest knew nothing about the position being terminated.

On January 27, 2000, plaintiff's work assignment was changed to "general maintenance one." This required his presence at work between 7:30 a.m. and 3:30 p.m., Central Time. He states this time period covered the entire time period during which the New York Stock Exchange is open for trading and the time period during which Mr. Firestone and Ms. Smith were available to assist him with stock transactions. He states Mr. Gilcrest's job assignment was not changed.

On February 8, 2000, plaintiff submitted written correspondence to defendant Smith, a unit manager, asking: (a) to be advised of the identity of the person who had targeted him and (b) to be provided with the specific BOP policy which was being enforced against plaintiff. Defendant Smith did not respond to the inquiry but instead, on February 15, 2000, suggested that plaintiff submit his inquiry to the defendants

---

[6]Plaintiff alleges defendant Timms, a lieutenant, expressed some reservations concerning serving the incident report on plaintiff. However, defendant Whaley, a captain, instructed defendant Timms to serve plaintiff with the incident report.

located in the Special Investigative Section. Plaintiff complied with the suggestion. However, defendant Marshal, a special investigative supervisor, refused to accept the inquiry and suggested that the inquiry be returned to defendant Smith. Plaintiff states he never received a response to his inquiry.

On March 14, 2000, defendant Christie, a correctional officer, served plaintiff with an incident report for conducting a business. The incident report alleged that "at approximately 11:00 a.m. on March 14, 2000, while scanning incoming mail in the complex mailroom, I discovered that inmate Flint has been conducting trades on the stock market. An intercepted statement addressed to Flint shows Flint making a purchase of a stock on 3/8/00 and a sale of that same stock on the same date with a profit."

Plaintiff alleges that on March 29, 2000, a Housing Unit Team meeting was held between plaintiff, United Manager Stephen Anstey, and defendant Leon. During the meeting, the participants discussed: (a) BOP policy concerning conducting a business; (b) an inmate investing and saving his money for future release from custody; (c) the incident report received by plaintiff for conducting a business; and (d) plaintiff being given a new work assignment. Plaintiff states that at the conclusion of the meeting, Mr. Anstey expunged the incident reports because there was no specific written BOP policy in place. Plaintiff was also returned to his original work assignment.

Plaintiff states he subsequently submitted a request to Mr. Anstey for information concerning any BOP policy concerning which prohibited inmates from purchasing stock. Plaintiff received a response from the prison's legal unit on May 2, 2001. The response indicated that during the time period in question, BOP had no specific written or unwritten policy which precluded stock purchases. The response further indicated a new policy concerning stock purchases were under consideration and that several policies which encouraged inmates to engage in saving activities were being revised.

Plaintiff asserts that the lack of a specific BOP policy at the time the incident reports were written against him demonstrates the incident reports were written against him, and his work assignment was changed,

in retaliation for comments his [sic] made during his conversation with his former paramour. He also states the sanctions were imposed against him because of his race, given the fact that Mr. Gilcrest's job assignment was not changed.

(Ex. B at pp. 1-6).[7]

The magistrate judge to whom the Texas case was assigned entered a report and recommendation on April 11, 2003, finding that the claims should be dismissed for failure to exhaust administrative remedies. (Ex. G at p. 5). Flint objected to the report and recommendation and it was withdrawn. (*Id*. at p. 6). A second report and recommendation was filed on June 5, 2003, recommending that the action be dismissed for failure to state a claim. (*Id*.). Flint filed objections to the recommendation. (*Id*.). That report and recommendation also was later withdrawn. (*Id*. at p. 7).

On August 28, 2003, Flint filed a motion to amend his complaint to add McTizic as a second party. (*Id*. at p. 6). In support of this motion, he stated that, due to the suspension of his telephone privileges for thirty days because of the finding of a violation of BOP policy, he could not communicate with McTizic. (Ex. C at p. 2). On September 19, 2003, McTizic filed a "motion to clarify joinder and claim." (Ex. G at p. 6). Flint and McTizic also filed a second joint motion to amend the complaint on the same day. (*Id*.). The first motion to amend and add McTizic as a party was

---

[7]Unless specified otherwise, the exhibits are attached to the original petition.

granted by the court on February 19, 2004. (*Id*.). McTizic was severed from Flint's case on July 7, 2004. (*Id*.). A second action was commenced in this court on behalf of McTizic premised on the original complaint. (*Id*. at p. 1). As far as this court can discern at this juncture, both actions are still pending in the United States District Court for the Eastern District of Texas.

## Exhaustion of Administrative Remedies

According to the documents attached to the petition, Flint asked for permission to correspond with McTizic and was denied that privilege by his "Unit Team" on September 2, 2003. (Petition at p. 2; Ex. A at p. 1). He appealed that denial and it was affirmed by respondent Warden Martha Jordan on September 26, 2003. (*Id*.). In denying Flint's request, she stated:

> . . . . You have submitted a motion to have the other inmate added to your case and are currently awaiting the courts [sic] decision on this motion. If the court rules in favor of your motion and the other inmate is added, your request will be reconsidered. However, at this time, you are not [a] party to the same legal action with the other inmate.
>
> Based on the above information, your Request for Administrative remedy is denied.

(Ex. A at p. 1). Flint appealed to the Regional Director for the BOP. The denial of relief was affirmed on November 18, 2003. The Director stated, "Our investigation reveals inmate to inmate correspondence cannot be approved at this time because the other inmate does not meet the criteria as outlined above." (Ex. A at p. 2). Flint next

appealed the denial of relief to the National level. The Administrator for National Inmate Appeals denied the appeal on February 10, 2004, stating:

> Our review reveals the Warden and Regional Director adequately responded to the issue you raised in your appeal. As noted in your response, the inmate you request correspondence privileges with does not meet the criteria outlined in P.S. 5365.11 Correspondence. This P.S. states an inmate may be permitted to correspond with an inmate in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved. If you have additional information that indicates otherwise, we encourage you to contact your Unit Team. Accordingly, your appeal is denied.

(Ex. A at p. 3).

## DISCUSSION

### Motion to Dismiss

McTizic, who is presently confined in federal custody in Texas, and Flint, who is confined at FCI Talladega, assert that the BOP has denied them correspondence privileges. Specifically, they assert: (1) that BOP policy permits limited inmate correspondence when the inmates are either parties or witnesses in litigation; (2) they are parties or witnesses in litigation; and (3) the wardens at FPC Bryan and FCI Talladega have refused to allow them to correspond. (Petition at pp. 3-4). Respondent Jordan has moved to dismiss the present action (doc. no. 6). She asserts it is moot due to the fact that, as the Warden of FCI Talladega, she has approved the requests for correspondence privileges of the parties and the record reflects that

McTizic and Flint have been corresponding with each other.[8] Flint does not oppose the motion to dismiss following the court's resolution of the issues concerning costs and fees. (doc. no. 9).

## Mootness

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. *See Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318 (11th Cir. 2001). "The 'case or controversy' requirement imposes justiciability limitations on federal courts, and these limitations include mootness." *Nyaga v. Ashcroft*, 323 F.3d 906, 913 (11th Cir. 2003). Mootness is a "threshold inquiry" for the court in every case and is a jurisdictional issue. *Id*. In other words, an action that is moot cannot be characterized as an active "case or controversy" and dismissal is therefore mandated under those circumstances. *De La Teja v. United States*, 321 F.3d 1357, 1361-62 (11th Cir. 2003). Once a case becomes moot, any decision on the merits would constitute an impermissible advisory opinion. *Nyaga*, 323 F.3d at 913.

A case is "moot" when the court can no longer provide "meaningful relief" to the plaintiff. *Nyaga*, 323 F.3d at 913. Thus, even where events occur subsequent to the filing of the complaint which deprive the court of its ability to render meaningful

---

[8]The ability of Flint and McTizic to correspond is evidenced by the joint petition for relief which was signed by each petitioner to initiate these actions and the commonality of pleadings filed in each case.

relief to the plaintiff, the case is moot and must be dismissed. *Florida Public Interest Research Group Citizens Lobby, Inc. v. Environmental Protection Agency*, 386 F.3d 1070 (11th Cir. 2004); *Troiano v. Supervisor of Elections in Palm Beach County, Florida*, 382 F.3d 1276 (11th Cir. 2004).

In the present case, the court need not address the merits of Flint's claim. Flint does not dispute that correspondence privileges are now being permitted. It is apparent from the petition itself that Flint and McTizic have been able to correspond.[9] Therefore, even if the court were to grant the request for relief, the court would not be rendering any "meaningful relief." Consequently, the court lacks jurisdiction over this issue and it must be dismissed.

## Motion for an Award of Costs and Fees

Flint asserts that he is entitled to recover costs and fees under two theories. First, he asserts that he is entitled to recover his costs and fees pursuant to 28 U.S.C. § 2412. Second, he asserts that he is entitled to recover fees, costs, and damages under 5 U.S.C. § 552a(g)(1). The respondents disagree.

## Equal Access to Justice Act

Flint specifically contends that he is entitled to an award of costs under the Equal Access to Justice Act ("EAJA") because he is a "prevailing party" under the statute. Section 2412(a)(1) provides that

---

[9] It was signed by both petitioners.

> . . . a judgment for costs, . . . as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1). Section 2412(b) also permits the court to award "reasonable fees and expenses of attorneys" in addition to costs. 28 U.S.C. § 2412(b). Section 2412(d)(1)(A) further provides that

> . . . a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Generally, to recover fees under the EAJA a plaintiff must show that (1) he is the prevailing party, (2) the United States has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust, and (3) the requested fees and costs are reasonable. *Oro Vaca, Inc. v. Norton*, 55 Fed. Appx. 433, 435 (9th Cir. 2003).

Flint is not entitled to recover under § 2412 for a number of reasons. First, he is not a "prevailing party." In *Norton* the court provided the applicable considerations. It stated:

> Parties are ordinarily required to bear their own litigation costs. *Buckhannon* [*Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Res.*], 532 U.S. [598,] 602, [121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)].  A party is considered a "prevailing party" if there has been a "material alteration of the legal relationship of the parties." *Id.* at 604.
>
> The Supreme Court in *Buckhannon* concluded that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change" necessary to overcome the presumption that parties will bear their own fees. *Id.* at 605. Instead, the Court determined that a "prevailing party" is one who has been awarded relief such as an enforceable judgment on the merits or a court-ordered consent decree, which creates "a material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604.
>
> In *Perez-Arellano* [*v. Smith*, 279 F.3d 791 (9th Cir. 2002)], this court applied the Supreme Court's decision in *Buckhannon* to a petition for attorney's fees and costs under the EAJA. 279 F.3d 791. This court concluded "that a 'prevailing party' under the EAJA must be one who has gained by judgment or consent decree a 'material alteration of the legal relationship of the parties.'" *Id.* at 794 (quoting *Buckhannon*, 532 U.S. at 604).

*Norton*, 55 Fed. Appx. at 435-36.

The respondents' voluntary change in position, although it accomplished what Flint sought to achieve by this lawsuit, lacks the necessary judicial imprimatur on the change to support the award of attorneys' fees. This is particularly true in this matter due to the fact the record reveals that the Texas trial court only granted the motion to amend the complaint to add McTizic as a second party one week after the

Administrator for National Inmate Appeals denied the appeal.[10]  Accordingly, Flint is not a prevailing party under the circumstances.

Second, to the extent that Flint seeks costs and expenses under § 2412(d)(1)(A), the court finds that the position of the respondents was substantially justified.  In evaluating the respondents' position, the court must "consider both the merits of the government's litigation position and the merits of the underlying agency decision upon which the lawsuit is based."  *Norton*, 55 Fed. Appx. at 436 (citing *Wilderness Society v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993)).  "The underlying action must be justified to a degree that would satisfy a reasonable person, and its legal position must have a reasonable basis in both law and fact."  *Norton*, 55 Fed. Appx. at 436 (citing *Pierce v. Underwood*, 487 U.S. 552, 563-64 (1983)).

Respondent Warden Jordan immediately reevaluated her previous opinion when this court entered its order to show cause.  At that juncture, it was apparent that the United States District Court for the Eastern District of Texas had granted the motion to amend, and that the litigation, involving both Flint and McTizic, was pending.  Thus, her litigation position was reasonable in fact and law.  Additionally, it is clear that at

---

[10]To the extent that Flint and McTizic assert in conclusory fashion that they did not receive the February 19, 2004 order granting the motion to amend, the court does not find that sufficient to warrant a contrary conclusion.  Flint states that he "believes that Mailroom Officer Vest intercepted the February 19, 2004 [o]rder and thereafter destroyed the order instead of delivering the same to Flint as Vest and Flint have had past disputes regarding correspondence issues with McTizic and also in other unrelated matters."  (Petition at p. 5, n.6).  This is purely speculation and insufficient as a matter of law.

the time Flint was exercising his rights under the administrative process, particularly when Warden Jordan reviewed the denial of correspondence privileges, the Warden was justified in law and fact in denying the request because the Texas court had not yet granted the motion to amend.[11]

## Privacy Act

Flint specifically contends that he is entitled to an award of fees and costs under § 552a(g)(3)(B) and (4). The respondents retort that this claim is frivolous. The relevant substantive provisions of § 552a(g) provide:

> **(g)(1) Civil remedies**.--Whenever any agency
>
> . . .
>
> **(C)** fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual;
>
> . . .
>
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C). Upon a showing of a substantive violation, the allowable damages

provisions provide:

---

[11] This conclusion is equally applicable to the other respondents.

>> **(3)(B)** The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.
>
>> **(4)** In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
>
>>> **(A)** actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
>>> **(B)** the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. §§ 552a(g)(3)(B) & (4).

The court finds that Flint's claim for remuneration under these sections is without merit for a number of reasons. First, premised on the pleadings submitted by Flint, it is evident that the respondents did not fail to maintain the records concerning Flint and McTizic in a way that demonstrates a lack of "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to . . . the qualifications, . . . , rights, or opportunities of, or benefits" to Flint. 5 U.S.C. § 552a(g)(1)(C). Second, to the extent that Flint seeks to recover premised on an allegation that the actions were "intentional or willful," Flint's submissions do not support such a claim. Instead, the pleadings demonstrate that the respondents acted reasonably considering the changing circumstances surrounding the Texas litigation, and that the respondents acted properly when it became evident that the circumstances

regarding the Texas litigation changed.

## CONCLUSION

Premised on the foregoing, Flint's motion to recover fees, costs, and expenses (doc. no. 8) is due to be denied and the motion of respondent Warden Martha Jordan to dismiss this action (doc. no. 6) is due to be granted.  Accordingly, the court further finds that this matter is due to be dismissed with prejudice.

**DONE** this 26th day of January, 2006.

_____
United States District Judge